COPY

Given Paten Form

John D. Klinedinst, Bar No. 86254
Gregor A. Hensrude, Bar No. 226660
Samuel B. Strohbehn, Bar No. 257697
KLINEDINST PC
777 S. Figueroa St., 47th Floor
Los Angeles, California 90017
(213) 607-2115/FAX (213) 607-2116
jklinedinst@klinedinstlaw.com

Edward E. Casto, Jr., Esq.
Barry J. Bumgardner, Esq.
Steven W. Hartsell, Esq.
NELSON BUMGARDNER CASTO, P.C.
5601 Bridge Street, Suite 300
Fort Worth, Texas 76112
817-377-9111/FAX 817-377-3485

Attorneys for Plaintiff
GUARDIAN MEDIA TECHNOLOGIES, LTD.

FILED
2009 JUL 14 PM 4:13
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUARDIAN MEDIA TECHNOLOGIES, LTD., Plaintiff, v. ECHOSTAR CORPORATION and ECHOSTAR TECHNOLOGIES, L.L.C.; DISH NETWORK CORPORATION; DISH NETWORK, LLC, and DISH DBS CORPORATION, Defendants. | Case No. CV09-05095 PSG (RZx)<br><br>**COMPLAINT**<br><br>Date<br>Time:<br>Courtroom:<br>Judge:<br>Magistrate Judge:<br>Complaint Filed:<br>Trial Date: None set |

Plaintiff Guardian Media Technologies, Ltd. files this Complaint against Defendants EchoStar Corporation ("EchoStar Corp.") and EchoStar Technologies, L.L.C. (EchoStar Tech.") (collectively "EchoStar"); and Dish Network Corporation ("Dish Corp."), Dish Network LLC ("Dish LLC"), and Dish DBS Corporation ("Dish DBS") (collectively "Dish"); alleging as follows:

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

# I.

## THE PARTIES

1. Pursuant to the Court's directives during a hearing held on June 15, 2009, the filing date of this complaint relates back to December 22, 2008, for EchoStar Corp. and EchoStar Tech., which is the filing date of an original complaint for infringement against Defendants. This original complaint was dismissed without prejudice by the Court with an Order for Guardian to file this subsequent complaint.

2. The Dish defendants have been added because they are related to EchoStar Corp. and EchoStar Tech. This complaint does not relate back to with respect to the Dish defendants as they were not named in the original December 22, 2008 complaint.

3. Plaintiff Guardian Media Technologies, Ltd. ("Guardian") is a Texas Limited Partnership. Guardian has a mailing address at 3801 N. Capital of Texas Highway, E240-303, Austin, Texas 78746.

4. Defendant EchoStar Corporation is a corporation organized and existing under the laws of the State of Nevada with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado, 80112. It can be served via its registered agent for service of process, CSC Services of Nevada, Inc., 502 East John Street, Carson City, Nevada 89706.

5. Defendant EchoStar Technologies, L.L.C. ("EchoStar Technologies") is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado, 80112. It can be served via its registered agent for service of process, Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

6. Dish Network Corporation is a corporation organized ad existing under the laws of the State of Colorado with its principle place of business located at 9601 South Meridian Boulevard, Englewood, Colorado 80112. It can be served via its registered agent for service of process, R. Stanton Dodge, 9601 South Meridian Boulevard, Englewood, Colorado 80112.

7. Dish Network LLC is a corporation organized ad existing under the laws of the State of Colorado with its principle place of business located at 9601 South Meridian Boulevard, Englewood, Colorado 80112. It can be served via its registered agent for service of process, R. Stanton Dodge, 9601 South Meridian Boulevard, Englewood, Colorado 80112.

8. Dish DBS Corporation is a corporation organized ad existing under the laws of the State of Colorado with its principle place of business located at 9601 South Meridian Boulevard, Englewood, Colorado 80112. It can be served via its registered agent for service of process, R. Stanton Dodge, 9601 South Meridian Boulevard, Englewood, Colorado 80112.

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

## II.

## JURISDICTION AND VENUE

9. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284-285, among others. This Court has subject matter jurisdiction of the action under Title 28 U.S.C. §1331 and §1338(a).

10. The Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

11. Defendants have substantial contacts with the forum as a result of pervasive business activities conducted within the State of California and within this District, including but not limited to the manufacture, sale, and/or distribution of computers capable of playing DVDs and/or receiving television and/or video programs and/DVRs..

12. Defendants have committed acts of patent infringement, directly and/or through agents and intermediaries, by shipping, distributing, importing, offering for sale, and/or selling certain infringing products in California and, particularly, the Central District of California.

13. Defendants have purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the expectation that they will be

///

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

purchased by consumers in the Central District, who in turn use the products in an infringing manner in this District.

## III.

## PATENT INFRINGEMENT

14. On May 29, 1990, United States Patent No. 4,930,158 (the "'158 patent") was issued for "Selective Video Playing System." A true and correct copy of the '158 patent is attached hereto as Exhibit "A" and made a part hereof. On November 4, 2008, the United States Patent and Trademark Office issued a reexamination certificate for the '158 patent. A true and correct copy of this reexamination certificate is attached hereto as Exhibit "B" and is made a part hereof.

15. On May 29, 1990, United States Patent No. 4,930,160 (the "'160 patent") was issued for "Automatic Censorship of Video Programs." A true and correct copy of the '160 patent is attached hereto as Exhibit "C" and made a part hereof. On December 4, 2008, the United States Patent and Trademark Office mailed a Notice of Intent to Issue Ex Parte Reexamination Certificate in connection with two consolidated reexamination proceedings concerning the '160 patent. A true and correct copy of this notice is attached hereto as Exhibit "D" and is made a part hereof.

16. Guardian is the owner of the '158 and '160 patents (collectively, the patents-in-suit) with all substantive rights in and to the patents-in-suit, including the sole and exclusive right to prosecute this action and enforce the patents-in-suit against infringers, and to collect damages for all relevant times. The patents-in-suit are expired.

17. As it pertains to this lawsuit, the '158 patent generally relates to parental control features contained in DVD players, digital video recorders, personal computers, hand-held electronic devices, and other items that can play stored video programs and allow owners of the players to restrict the types of video viewed by others.

18. As it pertains to this lawsuit, the '160 patent generally relates to parental control features contained in televisions, personal computers, DVRs, and other electronic

///

devices that allow owners of such devices to restrict viewing of certain movies and other video content based on the particular program's rating. *See* 47 C.F.R. 15.120.

19. Prior to the expiration of the patents-in-suit, Defendants directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs) that infringed or, when used, infringed one or more claims of the '158 patent. In addition, Defendants induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by others.

20. Upon information and belief, prior to the expiration of the patents-in-suit, Defendants directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and set-top boxes) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Defendants induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by others.

21. Guardian has been damaged as a result of Defendants' infringing conduct. Defendants are, thus, liable to Guardian in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

22. Upon information and belief, Defendants' infringements were deliberate and with full knowledge of the '158 and '160 patents. Defendants' infringements were willful from the time Defendants became aware of the '158 patent, the '160 patent, and due to the infringing nature of their respective activities, Guardian is entitled to increased damages (up to three times) for the period of such willful infringement pursuant to 35 U.S.C. § 284.

///

///

///

///

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

## IV.

## JURY DEMAND

23. Guardian hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## V.

## PRAYER FOR RELIEF

Guardian requests that the Court find in its favor and against Defendants, and that the Court grant Guardian the following relief:

a. Judgment that one or more claims of United States Patent No. 4,930,158 and/or 4,930,160 have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others to whose infringement Defendants has contributed and/or by others whose infringement has been induced by Defendants;

b. Judgment that Defendants account for and pay to Guardian all damages to and costs incurred by Guardian because of Defendants' infringing activities and other conduct complained of herein;

c. That, to the extent Defendants had knowledge of their infringing activities, Defendants' infringements be found to be willful from the time that Defendants became aware of the infringing nature of their respective activities, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. That Guardian be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Guardian its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

///

///

///

///

f. That Guardian be granted such other and further relief as the Court may deem just and proper under the circumstances.

KLINEDINST PC

DATED: July 14, 2009

By: ______________________

John D. Klinedinst
Gregor A. Hensrude
Samuel B. Strohbehn
Attorneys for Plaintiff
GUARDIAN MEDIA TECHNOLOGIES, LTD.

Unsaved

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

# Exhibit "A"

**United States Patent** [19]
**Vogel**

[11] **Patent Number:** **4,930,158**
[45] **Date of Patent:** **May 29, 1990**

[54] **SELECTIVE VIDEO PLAYING SYSTEM**

[76] Inventor: **Peter S. Vogel**, 28 Adeline St., Faulconbridge, NSW 2776, Australia

[21] Appl. No.: **237,175**

[22] Filed: **Aug. 29, 1988**

[30] **Foreign Application Priority Data**

Sep. 2, 1987 [AU] Australia .............................. PI4107

[51] **Int. Cl.**[5] .............................................. **H04N 7/16**
[52] **U.S. Cl.** .......................................... **380/5**; 380/20; 380/23; 358/349
[58] **Field of Search** ....................... 380/3, 5; 358/349; 340/825.31, 825.34

[56] **References Cited**

U.S. PATENT DOCUMENTS

4,225,884 9/1980 Block et al. .......................... 380/20
4,528,588 7/1985 Löfberg .............................. 358/349
4,595,950 6/1986 Löfberg ................................ 380/5
4,670,857 6/1987 Rackman ........................... 380/5 X

OTHER PUBLICATIONS

Rae Atkey, "How You Can Censor Your Child's TV Viewing", The News Editorial (Adelaide) 8/25/1986.

*Primary Examiner*—Stephen C. Buczinski
*Assistant Examiner*—Bernarr Earl Gregory

[57] **ABSTRACT**

A classification code, recorded repeatedly along with program material, is recovered on playing a video recording, and used to inhibit replay if the recovered code matches any of a set of codes specified by the user. The codes which cause replay to be inhibited can be set by the user after entering a personal identity number. The user can optionally request that a code be recorded when recording a program. Signals are optionally provided so that an auxiliary device, such as a second video player, can be controlled in response to codes recovered. One application is to prevent children viewing certain video recordings without parental permission.

**22 Claims, 5 Drawing Sheets**




Record signal input 1
Classification code input 14
Record signal processor 2
Classification receiver 13
Classification code inserter 12
Storage medium 3
Transport controller 9
Replay signal processor 4
Microcomputer 6
Classification detector 5
Display 8
Keyboard 7
Replay signal output 10
Auxiliary output 11
Auxiliary input 12

Fig. 1

OPERATIONAL LOOP




Fig. 2


SET CLASSIFICATION
Enter
Request PIN
Input PIN from keyboard
Match PIN in N.V. memory?
No
Yes
Display group number n
Increment group number n=n+1
Input "enable" or "disable" from keyboard
Enable entered
Disable entered
Finished whole array? (n= end)
Yes
No
Exit
Clear bit n in array
Set bit n in array

Fig. 3

OVERRIDE




Fig. 4

AUXILIARY CONTROL




Fig. 5

# SELECTIVE VIDEO PLAYING SYSTEM

## FIELD OF THE INVENTION

The present invention relates to methods of, and apparatus for, controlling the playing of video programs recorded on tape or other storage medium. The term video program also includes an accompanying audio signal if any.

## BACKGROUND OF THE INVENTION

With the ready availability of video tape recordings and domestic equipment upon which they can be played, there is a need to restric access of certain groups of people to certain classes of program. For example it might be desired to prevent children viewing certain classes of material, for example pornographic or violent movies. Traditionally, such security needs have been addressed by physically preventing unauthorized persons from having access to restricted recordings. This method is becoming less practical as the availability of both videotapes and machines to play them increases. For example, parents who wish to have pornographic videotapes in the home, for adult viewing only, risks a child finding the tape and playing it in the parent' absence.

It is therefore desirable to provide means whereby display of preselected classifications of program material can be viewed only by authorized persons.

Arrangements for making video pragrams available to only authorised viewers have long been used in the context of subscription television services and the like. These schemes commonly use a form of scrambling to make the signal unintelligible except to authorized persons in possesion of appropriate un-scrambling means. While it would be possible to apply similar techniques to video programs, for example scrambling pornographic movies, this would have the undesired consequence of rendering these tapes unusable to all persons who do not have special replay means. For many purposes, such as the domestic situation cited above, it is desirable that in the default condition, that is when using standard equipment, the tape plays normally. This means that a specially equipped tape player is only required if it is desired to take advantage of the restricted viewing capability.

Prior-art video security means have also been directed to providing control of viewer access by the party from whom the program originates. This is not always satisfactory, for example in the case of parental control of children's viewing, it is desirable that the parent, rather than the publisher or supplier of the video tape, be able to select whether a given tape will be viewable or not.

## SUMMARY OF THE INVENTION

The present invention is directed to providing novel and improved means and method of controlling the playing of video recordings whereby authorised persons can select which classifications of material can be viewed.

According to a first aspect of the present invention, there is provided a video recording playing method comprising the steps of replaying a video program, recovering from the replayed signal a classification code accompanying the recording, comparing the recovered classification signal to a set of user-selected classifications, and depending on the result of this comparison, causing the replay of the program to be suspended or terminated.



According to a second aspect of this inventive concept, apparatus for playing a video recording is provided, comprising video recording replay means, classification code detector means, a comparator equipped to compare the recovered classification code to a set of user-selected classifications, and a controller capable of causing suspension or termination of replay on detection at the output of the comparator a signal indicating equality between the recovered classification code and a set of user-selected classifications.

Some embodiments of this invention also include an arrangement for enabling access to selection of classifications which are to cause suspension or termination of replay only after entering a security code, or personal identification number (PIN), by the user.

In the case of commercially pre-recorded video tapes, the classification code is recorded before distribution to the consumer, for example by the publisher or duplicator of the recordings. In cases where it is desired to control viewing of material recorded privately, for example off-air or by camera, recording means for combining a classification code with the recorded program can be provided as well.

## BRIEF DESCRIPTION OF THE DRAWINGS

An embodiment of the present invention will now be described, by way of example only, with reference to the drawings in which:

FIG. **1** is a schematic block diagram of an embodiment of the invention which includes means for optionally recording classification and program;

FIG. **2** is a schematic diagram of the operational loop of the programme executed by the microcomputer of this embodiment;

FIG. **3** is a schematic diagram of the software used for selecting which classifications cause suspension or termination of playing;

FIG. **4** is a schematic diagram of the software used for overriding the suspension or termination function; and

FIG. **5** is a schematic block diagram of the software used for control of auxiliary devices.

## DETAILED DESCRIPTION

As seen in FIG. **1** this embodiment of the invention comprises the conventional components of a video recorder/player (commonly known as VCR), including record signal processor **2**, replay signal processor **4**, transport controller **9** and storage medium **3**, which is typically a video cassette, but may also be a video disk or any other suitable storage medium.

The operation of this embodiment relies on the presence of a program classification code within the video signal. This can be provided in a number of well known ways which ensure that the presence of such codes do not interfere with the normal viewing of video programs. The method used in this embodiment is encoding of a digital word in the form of black and white transitions located on line **16** of the video signal. This position is chosen so as to be invisible on the CRT display. The technology for this form of signalling is well known, being commonly used for data broadcasting services such as Teletext.

For the purpose of recording a program and inserting a classification code for later use by the invention, clas-

sification code inserter 12 inserts a code, dictated by microcomputer 6, into line 16 of the video signal as it is recorded.

Classification detector 5 extracts line 16 from the replay signal, and presents the code found therein to an input of microcomputer 6.

Microcomputer 6 is self-contained "single chip computer" including RAM, ROM, IO ports, CPU and NV (non-volatile) memory. Microcomputer 6 may also perform many other functions required by the VCR, in addition to those specific to this invention. One of the output ports of microcomputer 6 controls transport controller 9. Other ports read data from keyboard 7 and send data to display 8.

Keyboard 7 is a press-button key array, which contains keys for control of all the usual VCR functions, as well as special keys used by this invention. The special keys include a SET CLASSIFICATION key, used for entering the classifications of undesired material, and an OVERRIDE key, used to disable the selective playing function and play a recording irrespective of classification. The channel selection keys commonly found on VCRs are used in this embodiment to serve the double purpose of allowing the user to enter a PIN (personal identity number). Similarly, the other keys of the VCR can serve double functions if desired.

Display 8 is used to signal the user as required. In this embodiment it comprises an eight character liquid crystal display. In other embodiments other forms of display can be used, including single LEDs or a video character generator which causes characters to be superimposed on the CRT display.

The selective viewing function of the invention is performed by the arrangement of FIG. 1 executing the program described schematically in FIG. 2 while a recordings is being played.

Referring now to FIG. 2, the program starts by scanning the keyboard to test for a key depression. If no key is pressed, the classification code, arriving from classification detector 5, is read, and an address is generated as a function of the code. A table is stored in the memory of microcomputer 6, the address of each data bit of the table corresponding to a unique classification code, and the state of each bit so addressed indicating the classification status, namely ENABLED or DISABLED. A set bit indicates DISABLED, while a clear bit indicates ENABLED. Having generated an address from the received code, microcomputer 6 then applies this address to the table, and tests the corresponding data bit. If the bit is set, microcomputer 6 signals transport controller 9 to stop replay. If the bit is clear, playing continues uninterrupted. This procedure is repeated as a loop at high speed, so that playing is quickly terminated on receipt of a classification code corresponding to undesired program content.

In order to allow authorised users to select whether a given classification code is to be enabled or disabled, the program of FIG. 2 also continually scans the keyboard, testing for depression of the SET CLASSIFICATION key. If this key is pressed, the SET CLASSIFICATION routine is performed, according to FIG. 3.

Referring now to FIG. 3, when the SET CLASSIFICATION key has been pressed, microcomputer 6 first requests, via display 8, that the user enter a PIN (personal identity number). A number is then input, in this embodiment three digits being used for security, and compared to the PIN stored in the NV memory of microcomputer 6. If the number does not match, the request is repeated. If the number does match, the first classification group number is displayed, and the user is requested to enter enable or disable, using two designated keys of keyboard 7. If enable is entered, the first bit of the code array is cleared. If disable is entered, the bit is set. A test is then performed to see whether the whole array has been programed. If it has, control is returned to the operational loop, if not, the next array element is addressed, and the input cycle repeated for the next classification code.



In this embodiment the array comprises three bits, corresponding to the classifications:

1. Violent
2. Sexually explicit
3. Adult only

The coding scheme of this embodiment uses an eight bit word, so that up to 256 classifications can be supported. The 253 unused bits of the array are cleared, so that all classifications other than the three listed above are always playable. If desired, this range of classifications can be extended greatly, by increasing the size of the memory array.

When an authorised person, for example a parent, desires to watch a program of disabled classification, it may be inconvenient to re-define the classifications enabled. For convenience, this embodiment provides an override function, which is invoked by pressing the OVERRIDE key of keyboard 7. Depression of this key is detected by the test in the operational loop of FIG. 2, and results in the execution of the override routine of FIG. 4.

Referring to FIG. 4, on entry to the override routine, the PIN is requested from the user. If the PIN does not match the number stored in NV memory, the routine terminates. If the correct PIN has been entered, replay is started, and the program continues looping until the STOP key is pressed, with the result that replay continues until the STOP key is pressed, irrespective of classification.

The operation so far described assumes that the tape being played has been processed so that a classification code is included in the video signal. This is applicable, for example, to pre-recorded tapes which are available for rental, and which have been provided with suitable codes by the supplier. This will also occur if the broadcaster of a program being recorded off-air has included a suitable code in the transmission. In cases where a recording is made of a program which does not contain the code, it is possible, using this embodiment, to include a code in the recording, for subsequent use in restricting viewing.

One way this can be achieved is by entering a code, using keyboard 7, prior to or during recording. Microcomputer 6 sends the input code to classification code inserter 12, where the code is combined with the video signal being recorded. This mode is useful if, for example, a pornographic movie is being recorded off-air by a parent who desires that the children of the household will not be able to replay it.

Another way codes can be recorded is to receive them from a remote source, such as a station where broadcast programs are being monitored and appropriate classifications are being transmitted. In this case, the classification code arriving at classification code input 14 is received by classification receiver 13, which presents the received classification to an input of microcomputer 6. Microcomputer 6 then instructs classification inseter 12 to insert the current code into the recorded

signal. An application of this technique is to record programs and classifications in cases where classifications might change from time to time, or where the person operating the VCR is not present during the whole recording and is therefore not able to enter classifications manually.

The selective playing function described above is directed to simply terminating replay of a tape which is of a prohibited classification. This is a desirable capability if, for example, the objetive is to prevent children watching pornographic tapes. A further capability of the invention, directed to providing means for replacing unwanted program with programme from another source, will now be described.

Referring again to FIG. 1, microcomputer 6 is provided with auxiliary output 11 and auxiliary input 12, which are used under control of the programs shown schematically in FIG. 5 to provide substitution of alternative programme on detection of prescribed codes.

Referring now also to FIG. 5, on entry to the auxiliary control program, microcomputer 6 starts playing. The detected classification code, recovered from the recording, is then read, and unless the code is a code designated as "REPLACE", the process is repeated until the STOP key is pressed. If a REPLACE code is detected, a signal is sent to auxiliary output 11. On receipt of this signal, an auxiliary device, such as another VCR, responds by playing another recording, and an auxiliary switching device selects the substitute material to be displayed instead of the signal from replay signal output 10. Microcomputer 6 continues reading replayed codes from classification detector 5 until the REPLACE code is no longer detected, at which time microcomputer 6 suspends replay by issuing a suitable command to transport controller 9. The main program tape is now positioned beyond the material to be replaced and ready to resume playing the desired program. When the auxiliary device has finished replaying the substitute program, it sends a signal to auxiliary input 12, which is received by microcomputer 6 which causes replay of the first program to resume. In some cases it may be desirable to advance quickly through unwanted program carrying the REPLACE code, for example using the fast-forward or picture-search capabilities of the transport mechanism. An application of this substitution capability of this embodiment is replacing advertisements within a recorded program with alternative advertisements or information. In this case, the auxiliary device can be a VCR which plays a recording comprising a number of advertisements or messages, each of which is longer in duration than the material to be replaced, ensuring that the main program into which the alternative material is to be inserted resumes without interruption on receipt of the auxiliary input signal at the conclusion of the inserted segment. The main program can consist of a number of segments separated by advertisements to be substituted, carrying REPLACE code, or by short breaks of, say, black program carrying REPLACE code.

The foregoing describes only some embodiments of the invention and modifications, obvious to those skilled in the art, can be made without departing from the scope of the present invention.

For example, in cases where one of several available channels of broadcast program is being recorded prior to subsequent replay, and classification codes are being received from a remote source for combining with the program, it is desirable that each classification code



received be identified as relating to a particular channel, and only the code relating to the channel being recorded be combined with the recorded signal. This feature is easily added to the embodiments described, especially in cases where the keyboard and microcomputer of the invention are also used to control the channel selection functions of the television receiver.

Whereas the embodiment of the invention described above relies upon signals encoded into the video portion of the video program, the invention can also be effectively implemented using signals embedded into the audio portion of the program using any of the available well-known techniques which do not interfere with normal sound reception.

Whereas the embodiment described above uses control of the tape transport mechanism to inhibit playing, the invention can also be realised using other means of suppressing replay, for example, disabling the output signal without stopping tape motion.

The invention is also not limited to application with tape as the recording medium, being equally suited to use with video disk or any other video storage technique.

The classification code used by this invention can also be used to provide other useful additional functions, such as displaying the title of the program being played, locating a particular program on a videotape, or gathering data for audience research purposes.

What I claim is:

1. A video recording playing method comprising the steps of:

receiving, from a video storage medium, signals representative of a video program,

processing said signals to produce video signals of a form suitable for display,

detecting a classification code within the signals received from the storage medium, said detected code being indicative of a class of program being played,

inputting from the user a security code number, comparing the number input to a stored number and, if the numbers are equal, enabling selection of a set of classification codes which cause at least one of suspension or termination of playing,

comparing the detected code to said set of classification codes, and

selectively playing the video program according to the result of the comparison.

2. A video recording playing method according to claim 1 wherein a classification code has been previously transmitted along with a video program being broadcast, said program and code being stored on a storage medium which is subsequently replayed.

3. A video recording playing method according to claim 1, wherein the classification code forms part of the signal recorded on a video recording which is one of a number of duplicate recordings made available for acquisition by the public.

4. A video recording playing method according to claim 1, comprising the further steps of inputting from the user a code to be recorded along with a video program being recorded, inserting said code into the signal being recorded, recording the combined signals on a video storage medium, and replaying the recorded signal.

5. A video recording playing method according to claim 1, comprising the further steps of receiving a video program from a first source, receiving a classifica-

tion code from a second source, combining said code with said program, recording the combined signals on a video storage medium, and replaying the recorded signal.

6. A video recording playing method according to claim 1 and including the further step of transmitting to an auxiliary device a signal indicating the classification of program being replayed.

7. A video recording playing method comprising the steps of:

receiving, from a video storage medium, signals representative of a video program,

processing said signals to produce video signals of a form suitable for display,

detecting a classification code within the signals received from the storage medium, said code being indicative of a class of program being played,

comparing the detected code to a set of selected codes,

selectively playing the video program according to the result of the comparison, and

transmitting to an auxiliary device a signal indicating the classification of program being replayed.

8. A video recording playing method comprising the steps of

receiving from a video storage medium signals representative of a video program,

processing said signals to produce video signals of a form suitable for display,

detecting a code within the signal received from the storage medium,

comparing the detected code to a set of selected codes, and, according to a predetermined result of the comparison:

sending a signal to an auxiliary device,

causing playing of the video program to be suspended,

waiting until a resumption signal is received, and resuming replay of the suspended program after receiving the resumption signal.

9. A method as in claim 8 comprising the further steps of inputting, from the user, a security code number, comparing the number input to a stored number, and if the numbers are equal, enabling selection of said set of selected codes.

10. A method as in claim 8 wherein said predetermined result of the comparison is one indicative of material substitution,

and further comprising the step of receiving and playing substitute program material from the auxiliary device until the resumption signal is received.

11. A method as in claim 10 further comprising the step of, during said predetermined comparison result and until said resumption signal is received, advancing playing the material using a fast forward function.

12. A video recording player which displays video on a video display means, comprising:

means for receiving, from a video storage medium, signals representative of a video program,

processing means for converting said signals into video signals of a form suitable for application to the video display means,

means for detecting a classification code within the signal received by the receiving means, said code being indicative of a class of program being played,

input means for accepting from the user a security code number;

enabling means for enabling selection of a set of classification codes which cause suspension or termination of playing, said enabling means enabling said selection only if the security code number input is the same as a stored security code number,

means for comparing the detected code to said set of classification codes, and

controller means for selectively playing the video program according to a result of the comparison.

13. A video recording player according to claim 12 including means for recording a video program transmitted from a remote location, said video program containing within the signal a classification code.

14. A video recording player according to claim 12, wherein the classification code forms part of the signal recorded on a video recording which is one of a number of duplicate recordings made available for acquisition by the public.

15. A video recording player according to claim 12, including means for inputting a code from the user, means for receiving video program from a remote source, means for combining said input code with said received program, and means for recording the combined signals on a video storage medium.

16. A video recording player according to claim 12, including means for receiving a video program from a first source, means for receiving a classification code from a second source, means for combining said code with said program, and means for recording the combined signals on a video storage medium.

17. A video recording player according to claim 12, including means for transmitting to an auxiliary device a signal indicating the classification of program being replayed.

18. A video recording player which displays video on a video display means, comprising:

means for receiving, from a video storage medium, signals representative of a video program,

processing means for converting said signals into video signals of a form suitable for application to the video display means,

means for detecting a classification code within the signal received by the receiving means, said code being indicative of a class of program being played,

means for comparing the detected code to a set of selected codes, and

controller means for selectively playing the video program according to a result of the comparison, and

means for transmitting to an auxiliary device a signal indicating the classification of program being played.

19. A video recording player comprising:

means for receiving, from a video storage medium, signals representative of a video program,

processing means for forming video signals of a form suitable for application to a video display means from said signals,

means for detecting a code within the signal received by the receiving means,

means for comparing the detected code to a set of selected codes, and

controller means for, according to the result of the comparison, sending a signal to an auxiliary device, to cause playing of the video program to be suspended, and responsive to a resumption signal to resume playing of the suspended program when the resumption signal is received.

20. A player as in claim 19 further comprising inputting means for inputting, from the user, a security code number, and

means for comparing the number input to a stored number, and if the numbers are equal, enabling selection of said set of selected codes.

21. A player as in claim 19 wherein said predetermined result of the comparison is one indicative of material substitution,



and further comprising means for receiving and playing substitute program material from the auxiliary device until the resumption signal is received.

22. A method as in claim 21 further comprising fast forward means for, during said predetermined comparison result and until said resumption signal is received, advancing playing the material using a fast forward function.

* * * * *

# Exhibit "B"

US004930158C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (6501st)

**United States Patent** (10) **Number: US 4,930,158 C1**

**Vogel** (45) **Certificate Issued: Nov. 4, 2008**

(54) **SELECTIVE VIDEO PLAYING SYSTEM**

(75) Inventor: **Peter S. Vogel**, Faulconbridge (AU)

(73) Assignee: **Guardian Media Technologies Ltd.**, La Jolla, CA (US)

**Reexamination Request:**
No. 90/007,746, Oct. 13, 2005
No. 90/008,544, Jan. 31, 2007

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **4,930,158** |
| Issued: | **May 29, 1990** |
| Appl. No.: | **07/237,175** |
| Filed: | **Aug. 29, 1988** |

(30) **Foreign Application Priority Data**

Sep. 2, 1987 (AU) ........................ PI4107

(51) **Int. Cl.**
***G11B 27/10*** (2006.01)
***H04N 7/16*** (2006.01)

(52) **U.S. Cl.** ..................... **386/94**; 348/E7.06; 380/202; 725/142; 725/28

(58) **Field of Classification Search** ..................... None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,673,318 A | 6/1972 | Olsen | 178/5.8 R |
| 3,859,457 A | 1/1975 | Kirk | 178/5.1 |
| 3,919,462 A | 11/1975 | Hartung | 178/5.1 |
| 3,919,479 A | 11/1975 | Moon | 179/1 |
| 4,068,264 A | 1/1978 | Pires | 358/122 |
| 4,114,139 A | 9/1978 | Boyd | 340/147 |
| 4,215,366 A | 7/1980 | Davidson | 358/124 |
| 4,225,884 A | 9/1980 | Block | 358/122 |
| 4,229,765 A | 10/1980 | Sanger | 358/188 |
| 4,245,245 A | 1/1981 | Matsumoto | 358/122 |
| 4,266,098 A | 5/1981 | Novak | 179/5.5 |
| 4,280,139 A | 7/1981 | Mogi | 358/165 |
| 4,325,078 A | 4/1982 | Seaton | 358/117 |
| 4,331,974 A | 5/1982 | Cogswell | 358/86 |
| 4,333,110 A | 6/1982 | Faerber | 358/165 |
| 4,338,628 A | 7/1982 | Payne | 358/120 |
| 4,348,696 A | 9/1982 | Beier | 358/188 |
| 4,354,201 A | 10/1982 | Sechet | 358/122 |
| 4,375,651 A | 3/1983 | Templin | 358/191.1 |
| 4,386,436 A | 5/1983 | Kocher | 455/151 |
| 4,398,193 A | 8/1983 | Kuniyoshi | 340/825.76 |
| 4,425,579 A | 1/1984 | Merrell | 358/86 |
| 4,484,217 A | 11/1984 | Block et al. | 358/84 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 536261 B | 5/1982 |
| AU | 80145-82 | 10/1982 |
| AU | 56757-86 | 11/1986 |
| EP | A-O-053885 | 6/1982 |
| EP | 0112575 A1 | 12/1983 |
| EP | 0112575 B1 | 3/1986 |
| GB | 1424739 A | 2/1976 |
| GB | 8138341 | 6/1983 |
| GB | 2206759 A | 1/1989 |
| GB | 2206759 B | 1/1992 |
| JP | 59-210782 | 11/1984 |

OTHER PUBLICATIONS

Rae Atkey, "How You Can Censor Your Child's TV Viewing," The News Editiorial (Adelaide) Aug. 25, 1986.

*Primary Examiner*—Ovidio Escalante

(57) **ABSTRACT**

A classification code, recorded repeatedly along with program material, is recovered on playing a video recording, and used to inhibit replay if the recovered code matches any of a set of codes specified by the user. The codes which cause replay to be inhibited can be set by the user after entering a personal identity number. The user can optionally request that a code be recorded when recording a program. Signals are optionally provided so that an auxiliary device, such as a second video player, can be controlled in response to codes recovered. One application is to prevent children viewing certain video recordings without parental permission.



U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,488,179 A | | 12/1984 | Krüger | 358/181 |
| 4,510,623 A | | 4/1985 | Bonneau | 455/181 |
| 4,520,404 A | | 5/1985 | Von Kohorn | 358/355 |
| 4,528,588 A | | 7/1985 | Löfberg | 358/122 |
| 4,528,589 A | | 7/1985 | Block et al. | 358/122 |
| 4,530,008 A | | 7/1985 | McVoy | 358/123 |
| 4,536,791 A | | 8/1985 | Campbell | 358/122 |
| 4,554,584 A | | 11/1985 | Elam et al. | 358/165 |
| 4,588,857 A | | 5/1986 | Arsem | 179/6.06 |
| 4,591,664 A | | 5/1986 | Freeman | 179/6.06 |
| 4,595,950 A | | 6/1986 | Löfberg | 358/122 |
| 4,598,288 A | | 7/1986 | Yarbrough | 340/825.34 |
| 4,599,647 A | | 7/1986 | George | 358/122 |
| 4,600,921 A | | 7/1986 | Thomas | 340/825.31 |
| 4,602,297 A | | 7/1986 | Reese | 360/14.1 |
| 4,605,964 A | | 8/1986 | Chard | |
| 4,605,973 A | | 8/1986 | Von Kohorn | 358/335 |
| 4,620,229 A | | 10/1986 | Amano et al. | |
| 4,670,857 A | | 6/1987 | Rackman | 380/4 |
| 4,685,131 A | | 8/1987 | Horne | 380/20 |
| 4,695,904 A | | 9/1987 | Shinyagaito | 358/342 |
| 4,696,034 A | * | 9/1987 | Wiedemer | 380/230 |
| 4,718,107 A | | 1/1988 | Hayes | |
| 4,729,044 A | | 3/1988 | Kiesel | 360/14.3 |
| 4,750,213 A | | 6/1988 | Novak | 455/67 |
| 4,787,063 A | | 11/1988 | Muguet | 364/900 |
| 4,814,883 A | | 3/1989 | Perine | 358/181 |
| 4,888,796 A | | 12/1989 | Olivo, Jr. | |
| 4,896,354 A | | 1/1990 | Inagaki et al. | |
| 4,939,596 A | | 7/1990 | Takayama | 360/27 |

* cited by examiner

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.



AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims **8–11** and **19–22** is confirmed.

Claims **1–7** and **12–18** are cancelled.

* * * * *

# Exhibit "C"

**United States Patent** [19]
**Vogel**

[11] **Patent Number:** **4,930,160**
[45] **Date of Patent:** **May 29, 1990**

[54] **AUTOMATIC CENSORSHIP OF VIDEO PROGRAMS**

[76] Inventor: **Peter S. Vogel**, 28 Adeline Street, Faulconbridge NSW 2776, Australia

[21] Appl. No.: **237,176**

[22] Filed: **Aug. 29, 1988**

[30] **Foreign Application Priority Data**

Sep. 2, 1987 [AU] Australia ............................ PI4107

[51] **Int. Cl.**[5] ............................................ **H04K 1/00**
[52] **U.S. Cl.** ...................................... **380/23**; 358/84; 358/349; 455/2; 455/4; 380/20; 340/825.34
[58] **Field of Search** ...................................... 380/3–5, 380/23, 20; 364/200, 900, DIG. 545; 358/84, 86, 139, 908, 349; 455/2, 4–6, 67–70; 340/825.31, 825.34

[56] **References Cited**

U.S. PATENT DOCUMENTS

3,859,457 1/1975 Kirk, Jr. ........................ 358/86 X
3,919,479 11/1975 Moon et al. .................... 358/84 X
4,331,974 5/1982 Cogswell et al. .................. 358/86
4,520,404 5/1985 Von Kohorn .................. 358/84 X
4,530,008 7/1985 McVoy ............................... 380/23
4,605,973 8/1986 Von Kohorn ..................... 455/4 X
4,620,229 10/1986 Amano et al. ...................... 358/349
4,685,131 8/1987 Horne ............................. 358/86 X
4,718,107 1/1988 Hayes ..................................... 455/4
4,750,213 6/1988 Novák ..................................... 455/67
4,814,883 3/1989 Perine et al. ..................... 358/84 X

*Primary Examiner*—Stephen C. Buczinski
*Assistant Examiner*—Bernarr Earl Gregory

[57] **ABSTRACT**

A video program is received from a broadcast or video recording and displayed for viewing. On receipt of a prescribed classification code or group of codes display is switched to an alternative source. The classification code can be encoded into the broadcast or tape being viewed, or can originate from a separate source. The alternative material displayed can be another broadcast, a local recording, a locally-generated pattern, or other material. The codes which cause the display to be switched to the alternative source can be set by the user after entering a personal identity number.

**26 Claims, 5 Drawing Sheets**




www.FreePatentsOnline.com




Fig. 1

www.FreePatentsOnline.com

OPERATIONAL LOOP




Fig. 2

www.FreePatentsOnline.com

SET CLASSIFICATION




Fig. 3

www.FreePatentsOnline.com

OVERRIDE




Fig. 4

www.FreePatentsOnline.com




Fig. 5

www.FreePatentsOnline.com

# AUTOMATIC CENSORSHIP OF VIDEO PROGRAMS

## FIELD OF THE INVENTION

The present invention relates to methods of, and apparatus for, automatic censorship of video programs. The term video program used hereinafter refers to television programs broadcast free-to-air or by cable or by satellite, and other forms of mass distribution of video programs, including distribution by video tape or other media. The term also includes an accompanying audio signal if any.

## BACKGROUND OF THE INVENTION

The need for censorship of video material is generally accepted by most societies, for the purposes of preventing the viewing of material by persons other than the target audience. Usually, such censorship takes the form of limiting access of a certain group of people, for example children, to a certain class of material, for example pornographic or violent movies. Other uses of censorship include voluntary self-censorship in cases where a recipient of a program does not wish to be exposed to certain types of program, for example scenes of great violence, advertisements which may be considered offensive, or non-program material which interrupts movies, drama or sports broadcasts.

Being the most widely accessible form of broadcasting, television is the medium with which the problem of censorship is experienced most. Traditionally, censorship of television takes the form of either preventing possibly offensive material from being broadcast in the first place, or voluntary self-censorship, that is, switching off the receiver when material which the viewer does not wish to experience is being broadcast. Another form of self-censorship, which has gained popularity since the introduction of remote controls for television sets is the phenomenon known as "zapping". Zapping involves eliminating unwanted material by muting the receiver or changing channels for the duration of the unwanted segment. While such self-censorship offers the benefit that all classes of material remain available to those who do not find them objectionable, it suffers from the inconvenience of having to anticipate the nature of broadcasts and operate the receiver appropriately. This process is tedious and error-prone, especially where the viewer wishes to suppress program material which changes rapidly in nature, for example when the viewer desires to suppress commercial messages within an otherwise unobjectionable program. Manual censorship is therefore not an entirely satisfactory solution.

It is therefore desirable to provide means whereby display of preselected classifications of program material can be automatically suppressed.

Arrangements for automatic censorship have been previously published, but suffer from a number of serious shortcomings. The main difficulty is that automatic means for discrimination of different program classifications, for example detection of television commercials, have been complex and unreliable. One technique has been to detect television commercials by the short period of black picture and silence separating them from other program material. A typical commercial-deleter of this type is described in U.S. Pat. No. 4,319,286. This system and others like it suffer from the problem that erroneous operation occurs if there is a brief period of black and silence in a broadcast at a time other than at the beginning of a commercial break, or if there is no separation between commercials and other program material. Furthermore, such systems are unable to distinguish between resumption of desired program and further commercials at the conclusion of a commercial. Resumption of viewing or recording must therefore be controlled by some form of timing device, based on assumptions regarding the length of commercial breaks. If these assumptions are not correct, the system will fail in its function.



A much improved censorship means is described in U.S. Pat. No. 4,520,404. This system relies on a human operator to classify broadcasts, based on observation at a monitoring station. A suitably coded message is distributed from the monitoring station to the viewer's home, at which point a suitably-equipped decoder controls the television receiver or video recorder in accordance with the classification data generated by the human operator at the monitoring station. Although this invention significantly improves upon the reliability of previous methods, it nevertheless suffers significant limitations. One limitation is the difficulty of accurately predicting at the monitoring station when a change of program is going to occur, making the system somewhat error prone. Another limitation is that when the system is used under the control of one party to control the viewing of another party, for example used by parents to limit viewing by children, it is necessary to provide control means by which the class of program to be censored can be selected, and it is therefore possible for the other party to use these controls to disable the censorship, thereby defeating the function of the system. Yet another limitation is that during the period that unwanted material is being censored, the receiver is simply disabled. The viewer is therefore periodically presented with a blank screen and/or silence, which may have the undesirable effect of causing alarm when program suddenly resumes, or may be mistaken for a receiver malfunction.

The prior art methods are also deficient in that they do not provide means whereby an authorized person can selectively disable viewing of certain classifications of pre-recorded video programs.

## SUMMARY OF THE INVENTION

The present invention is directed to providing novel and improved means and method of receiving video programs whereby the censorship function is provided automatically, substantially resolving the abovementioned shortcomings of the prior art as well as providing other benefits.

According to a first aspect of the present invention, there is provided a video program receiving method capable of automatically censoring video programs comprising the steps of receiving a video program, with accompanying audio if any, receiving a classification signal indicative of the content of the program being received, decoding the classification signal and, according to functions selected by the user, causing the receiver to direct to its output alternative program material for the duration of program of selected classification.

According to a second aspect of this inventive concept, apparatus for receiving and automatically censoring video program is also provided, and comprises a video program receiver, a classification signal receiver, a controller equipped to decode said received signal and

www.FreePatentsOnline.com

to control switching means which, according to functions selected by the user at the receiving station, cause the receiver to direct to its output alternative program material for the duration of program of selected classification.

The term "receiver" used herein is defined in the broad sense of apparatus for converting television signals (and their associated sound signals) into visual and audible signals, or apparatus for converting modulated carrier signals into video and/or audio signals suitable for display by video monitors or audition via amplifiers and loudspeakers. For example, the term receiver includes off-air domestic television sets, as well as apparatus known commonly as a "video monitor". The term "receive" is used in the broad sense of accepting signal from any signal conveyance means, for example, from an antenna, cable, optical fiber, magnetic tape, or optical disk.

Some embodiments of this invention also include an arrangement for enabling access to selection of classifications to be censored only upon entering of a security code, or personal identification number (PIN), by the user.

## BRIEF DESCRIPTION OF THE DRAWINGS

Some embodiments of the present invention will now be described, by way of example only, with reference to the drawings in which:

FIG. 1 is a schematic block diagram of a first embodiment of the invention in which the program classification is encoded into the vertical interval of the video signal;

FIG. 2 is a schematic diagram of the operational loop of the program executed by the microcomputer of the first embodiment;

FIG. 3 is a schematic diagram of the software used in either embodiment for setting classifications;

FIG. 4 is a schematic diagram of the software used in either embodiment for overriding the censorship function; and

FIG. 5 is a schematic block diagram of a second embodiment of the invention in which the program classification is received by the invention from a transmission source other than the program to be censored.

## DETAILED DESCRIPTION

As seen in FIG. 1 this embodiment of the invention comprises the conventional components of a television receiver or monitor, including audio amplifier 11, loudspeaker 12, CRT driver 10 and CRT 13. Under normal conditions, the sources of video and audio are selected from video input 3 and audio input 1 respectively. However when the selector means, relay 7 is energized, alternate audio input 2 and alternate video input 4 are selected instead. Both sets of audio and video inputs may derive from any source, for example a television tuner or video tape player.

The operation of this embodiment relies on the presence of a program classification code within the video signal. This can be provided in a number of well known ways which ensure that the presence of such codes do not interfere with the normal operation of television receivers. The method used in this embodiment is encoding of a digital word in the form of black and white transitions located on line 16 of the video signal. This position is chosen so as to be invisible on the CRT display. The technology for this form of signalling is well known, being commonly used for data broadcasting services such as Teletext. The classification may be pre-recorded on tapes being broadcast or played locally, or inserted in a video signal prior to transmission at the broadcasting station at the time of broadcast. The means for inserting such signals is well known.

Upon arrival at video input 3 of the invention, as well as being fed to the display system, the video portion of the program is fed to line code extractor 5, which comprises means for isolating the desired line (in this embodiment line 16), extracting the digital word from that line, and presenting it as an output readable by microcomputer 6.

Microcomputer 6 is a self-contained "single chip computer" including RAM, ROM, IO ports, CPU and NV (non-volatile) memory. Of course, microcomputer 6 may also perform many other functions required by the receiver, as well as those of this invention. One of the output ports of microcomputer 6 controls relay 7. Other ports read data from keyboard 8 and send data to display 9.

Keyboard 8 is a press-button key array, which contains keys for control of all the usual television functions, as well as special keys used by this invention. The special keys include a SET CLASSIFICATION key, used for entering the classifications to be censored, an OVERRIDE key, used to disable the censorship function, and a RESUME key, used to resume censorship after OVERRIDE. The usual channel selection keys of the receiver of this embodiment serve the double purpose of allowing the user to enter a PIN (personal identity number). Similarly, the other keys can serve double functions if desired.

Display 9 is used to signal the user as required. In this embodiment it comprises an eight character liquid crystal display. In other embodiments other forms of display can be used, including single LEDs, or a video character generator which causes characters to be superimposed on the CRT display.

The censorship function of the invention is performed by the arrangement of FIG. 1 executing the program described schematically in FIG. 2.

Referring now to FIG. 2, the program starts by scanning the keyboard to test for a key depression. If no key is pressed, the classification code, arriving from line code extractor 5, is read, and an address is generated as a function of the code. A table is stored in the RAM of microcomputer 6, the address of each data bit of the table corresponding to a unique classification code, and the state of each bit so addressed indicating the classification status, namely ENABLED or DISABLED. A set bit indicates DISABLED, while a clear bit indicates ENABLED. Having generated an address from the received code, microcomputer 6 then applies this address to the table, and tests the corresponding data bit. If the bit is set, relay 7 is energized, causing the video and audio signals to be switched to the alternate sources. If the bit is clear, relay 7 is released, with the opposite effect. This procedure is repeated as a loop at high speed, so that the operation of relay 7 follows instantaneous changes in classification codes arriving at the video input of the invention.

In order to allow authorized users to select whether a given classification code is to be enabled or disabled, the program of FIG. 2 also continually scans the keyboard, testing for depression of the SET CLASSIFICATION key. If this key is pressed, the SET CLASSIFICATION routine is performed, according to FIG. 3.

www.FreePatentsOnline.com

Referring now to FIG. 3, when the SET CLASSIFICATION key has been pressed, microcomputer 6 first requests, via display 9, that the user enter the PIN. A number is then input, in this embodiment three digits being used for security, and compared to the PIN stored in the NV memory of microcomputer 6. If the number does not match, the request is repeated. If the number does match, the first classification group number is displayed, and the user is requested to enter enable or disable, using two designated keys of keyboard 8. If enable is entered, the first bit of the code array is cleared. If disable is entered, the bit is set. A test is then performed to see whether the last element of the array has been programmed. If it has, control is returned to the operational loop, if not, the next array element is addressed, and the input cycle repeated for the next classification code.

In this embodiment the array comprises three bits, corresponding to the classifications:

1. Advertisement (commercial product or service promotion)
2. Non-program material (includes advertisements, station identification, community service announcements, commentary during movies etc.)
3. Restricted. Programs deemed by the government censors to be unsuitable for viewing by children.

The coding scheme of this embodiment uses an eight bit word, so that up to 256 classifications can be supported. The 253 unused bits of the array are cleared, so that all classifications other than the three listed above are always enable. If desired, this range of classifications can be extended greatly, by increasing the size of the memory array.

When an authorized person, for example a parent, desires to watch a program of disabled classification, it may be inconvenient to re-define the classifications enabled. For convenience, this embodiment provides an override function, which is invoked by pressing the OVERRIDE key of keyboard 8. Depression of this key is detected by the test in the operational loop of FIG. 2, and results in the execution of the override routine of FIG. 4.

Referring to FIG. 4, on entry to the override routine, the PIN is requested from the user. If the PIN does not match the number stored in NV memory, the routine terminates. If the correct PIN has been entered, relay 7 is released, and the program continues looping until the RESUME key is pressed, with the result that no censoring action occurs until the RESUME key is pressed.

A second embodiment of the invention is shown in FIG. 5. This embodiment is similar to the first embodiment, except that classification codes are received from a source separate from the source of video program. In this case, classification receiver 14 is provided to receive classification signal input 15, which can arrive from any source, for example a radio transmitter distinct from the transmitter broadcasting the video program. This embodiment of the invention is not suited to operation with prerecorded tapes as program source. Operation of this embodiment is the same as the first embodiment, except that classification codes are read from classification receiver 14, rather than line code extractor 5, by microcomputer 6. The software executed by microcomputer 6 is also the same. The capabilities of both embodiments could easily be combined.

The foregoing describes only some embodiments of the present invention and modifications, obvious to



those skilled in the art, can be made without departing from the scope of the present invention.

For example, in cases where a broadcast program is being viewed, more than one channel of broadcast is available, and the classification signal is being received from a source other than the broadcast being received, it is desirable that each classification code received be identified as relating to a particular channel, so that censorship can be based on which channel is being viewed or recorded. This feature is easily added to the embodiments described, especially in cases where the keyboard and microcomputer of the invention are also used to control the channel selection functions of the television receiver.

For the purpose of implementing the invention without needing to modify the television receiver, the invention can comprise a standard television receiver in combination with a special controller which controls operation of the receiver by means of the remote control interface of the television receiver, if the receiver is equipped with remote control. That is, the censorship controller is equipped with interface means compatible with the remote control communication standard, for example an infra-red transmitter, so muting, blanking, channel-changing, or other censorship actions can be effected using unmodified receiving equipment. The channel-change function can provide the facility of displaying alternative material during periods of censorship. For example, a suitable pattern generator tuned to an unused television channel could be used to provide "electronic wallpaper" during commercial breaks. In some applications it may be desirable to implement some functions of the invention, such as PIN entry, in the remote controller, and other functions, such as the censorship function, in the receiver.

Whereas the switching means of the embodiments described herein is a relay, any form of suitable switch, such as a solidstate arrangement, can be used.

The alternative material selected during censorship periods can originate from a remote source, for example another television broadcast, or locally, for example from a video disk or tape player. The local source may also be simply a black signal generator. Furthermore, the invention is not limited to providing only one alternative program source.

Whereas one embodiment of the invention described above relies upon signals encoded into the video portion of the received program, the invention can also be effectively implemented using signals embedded into the audio portion of the program, using any of the available well-known techniques which do not interfere with normal sound reception.

What I claim is:

1. A video program reception method comprising the steps of:

storing in memory means a set of codes descriptive of video program classifications,

receiving a video signal and associated audio signal if present,

receiving a program classification code descriptive of said video signal,

accessing said memory means and comparing the contents thereof with said code, and,

if the result of said comparison indicates that the received program is to be displayed, causing the received video signal to be selected for display,

if the result of said comparison indicates that an alternative video signal is to be displayed, causing an

www.FreePatentsOnline.com

alternative source of video signal to be selected for display; and

displaying the selected video signal on a video display means.

2. A video program reception method according to claim 1, wherein the alternative source of video signal originates from a remote transmitter.

3. A video program reception method according to claim 1, wherein the alternative source of video signal is local to the receiving station.

4. A video program reception method according to claim 1, comprising the further steps of:

inputting from the user a personal identity number,

comparing said number to a stored number, and if said numbers are equal,

permitting the user to alter the codes stored within said memory means.

5. A video program reception method according to claim 4, wherein the alternative source of video signal originates from a source remote to the receiver.

6. A video program reception method according to claim 4, wherein the alternative source of video signal is local to the receiving station.

7. A video program reception method according to claim 6, wherein the alternative source of video signal is a local video pattern generator equipped to generate at least a black pattern.

8. A video program reception method according to claim 4, wherein the program classification code is encoded into the video component of the program.

9. A video program reception method according to claim 4, wherein the program classification code is encoded into the audio component of the program.

10. A video program reception method according to claim 4, wherein the program classification code is not encoded into the program being received but is received from a separate source.

11. A video program reception method according to claim 1, wherein the program classification code is encoded into the video component of the program.

12. A video program reception method according to claim 1, wherein the program classification code is encoded into the audio component of the program.

13. A video program reception method according to claim 1, wherein the program classification code is not encoded into the program being received but is received from a separate source.

14. A video program receiver comprising:

a video signal receiver,

a program classification code receiver,

a program classification code memory,

means for accessing said memory and comparing the contents thereof with received codes,



selector means equipped to cause a received video signal to be selected for display if the result of said comparison indicates that the received program is to be displayed and to cause an alternative source of video signal to be selected for display if the result of said comparison indicates that an alternative video signal is to be displayed, and

means for displaying the selected video signal.

15. A video program receiver according to claim 14, wherein the alternative source of video signal originates from a remote transmitter.

16. A video program receiver according to claim 14, wherein the alternative source of video signal is local to the receiving station.

17. A video program receiver according to claim 14, further comprising:

means for inputting from the user a personal identity number,

means for comparing said number to a stored number, and control means permitting the user to alter the contents of said memory only if the compared numbers are equal.

18. A video program receiver according to claim 17, wherein the alternative source of video signal originates from a source remote to the receiver.

19. A video program receiver according to claim 17, wherein the alternative source of video signal is local to the receiving station.

20. A video program receiver according to claim 19, wherein the alternative source of video signal is a local video pattern generator equipped to generate at least a black pattern.

21. A video program receiver according to claim 17, including means for deriving the program classification code from the video component of the program.

22. A video program receiver according to claim 17, including means for deriving the program classification code from the audio component of the program.

23. A video program receiver according to claim 17, including means for receiving program classification code from a source other than the program being received.

24. A video program receiver according to claim 14, including means for deriving the program classification code from the video component of the program.

25. A video program receiver according to claim 14, including means for deriving the program classification code from the audio component of the program.

26. A video program receiver according to claim 14, including means for receiving program classification code from a source other than the program being received.

* * * * *

www.FreePatentsOnline.com

# Exhibit "D"

US004930160C1

# (12) EX PARTE REEXAMINATION CERTIFICATE (6744th)

# United States Patent

Vogel

(10) Number: **US 4,930,160 C1**

(45) Certificate Issued: **Apr. 7, 2009**

(54) **AUTOMATIC CENSORSHIP OF VIDEO PROGRAMS**

(75) Inventor: **Peter S. Vogel**, Faulconbridge (AU)

(73) Assignee: **Guardian Media Technologies Ltd.**, La Jolla, CA (US)

**Reexamination Request:**

No. 90/007,733, Sep. 26, 2005

No. 90/008,243, Sep. 29, 2006

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **4,930,160** |
| Issued: | **May 29, 1990** |
| Appl. No.: | **07/237,176** |
| Filed: | **Aug. 29, 1988** |

(30) **Foreign Application Priority Data**

Sep. 2, 1987 (AU) .............................................. P14107

(51) **Int. Cl.**

*G11B 27/10* (2006.01)

*H04N 7/16* (2006.01)

(52) **U.S. Cl.** .................... **725/30**; 340/5.74; 348/E7.06; 380/241; 725/142; 725/20; 725/28; 725/34

(58) **Field of Classification Search** .......... 348/632–634

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,673,318 A | 6/1972 | Olsen | 178/5.8 R |
| 3,859,457 A | 1/1975 | Kirk | 178/5.1 |
| 3,919,462 A | 11/1975 | Hartung | 178/5.1 |
| 3,919,479 A | 11/1975 | Moon | 179/1 |
| 4,068,264 A * | 1/1978 | Pires | 380/233 |
| 4,114,139 A | 9/1978 | Boyd | 340/147 |
| 4,215,366 A | 7/1980 | Davidson | 358/124 |
| 4,225,884 A | 9/1980 | Block | 358/122 |
| 4,229,765 A | 10/1980 | Sanger | 358/188 |
| 4,245,245 A | 1/1981 | Matsumoto | 358/122 |
| 4,266,098 A | 5/1981 | Novak | 179/5.5 |
| 4,280,139 A | 7/1981 | Mogi | 358/165 |
| 4,325,078 A | 4/1982 | Seaton | 358/117 |
| 4,331,974 A | 5/1982 | Cogswell | 358/86 |
| 4,333,110 A | 6/1982 | Faerber | 358/165 |
| 4,338,628 A | 7/1982 | Payne | 358/120 |
| 4,348,696 A | 9/1982 | Beier | 358/188 |
| 4,354,201 A | 10/1982 | Sechet | 358/122 |
| 4,375,651 A | 3/1983 | Templin | 358/191.1 |
| 4,386,436 A | 5/1983 | Kocher | 455/151 |
| 4,398,193 A | 8/1983 | Kuniyoshi | 340/825.76 |
| 4,425,579 A | 1/1984 | Merrell | 358/86 |
| 4,484,217 A * | 11/1984 | Block et al. | 725/1 |
| 4,488,179 A | 12/1984 | Krüger | 358/181 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 536261 B | 5/1982 |
| AU | 80145-82 | 10/1982 |
| AU | 56757-86 | 11/1986 |
| EP | A-0053885 | 6/1982 |
| EP | 0112575 A1 | 12/1983 |
| EP | 0112575 B1 | 3/1986 |
| GB | 1424739 A | 2/1976 |
| GB | 8138341 | 6/1983 |
| GB | 2206759 A | 1/1989 |
| GB | 2206759 B | 1/1992 |
| JP | 59-120782 | 11/1984 |

OTHER PUBLICATIONS

Rae Atkey, "How You Can Censor Your Child's TV Viewing," The News Editorial (Adelaide) Aug. 25, 1986.

*Primary Examiner*—Ovidio Escalante

(57) **ABSTRACT**

A video program is received from a broadcast or video recording and displayed for viewing. On receipt of a prescribed classification code or group of codes display is switched to an alternative source. The classification code can be encoded into the broadcast or tape being viewed, or can originate from a separate source. The alternative material displayed can be another broadcast, a local recording, a locally-generated pattern, or other material. The codes which cause the display to be switched to the alternative source can be set by the user after entering a personal identity number.



U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,510,623 | A | | 4/1985 | Bonneau | 455/181 |
| 4,520,404 | A | | 5/1985 | Von Kohorn | 358/355 |
| 4,528,588 | A | | 7/1985 | Löfberg | 358/122 |
| 4,528,589 | A | * | 7/1985 | Block et al. | 380/241 |
| 4,530,008 | A | | 7/1985 | McVoy | 358/123 |
| 4,536,791 | A | | 8/1985 | Campbell | 358/122 |
| 4,554,584 | A | | 11/1985 | Elam et al. | 358/165 |
| 4,588,857 | A | | 5/1986 | Arsem | 179/6.06 |
| 4,591,664 | A | | 5/1986 | Freeman | 179/6.06 |
| 4,595,950 | A | | 6/1986 | Löfberg | 358/122 |
| 4,598,288 | A | | 7/1986 | Yarbrough | 340/825.34 |
| 4,599,647 | A | | 7/1986 | George | 358/122 |
| 4,600,921 | A | | 7/1986 | Thomas | 340/825.31 |
| 4,602,297 | A | | 7/1986 | Reese | 360/14.1 |
| 4,605,964 | A | | 8/1986 | Chard | 358/147 |
| 4,605,973 | A | | 8/1986 | Von Kohorn | 358/335 |
| 4,620,229 | A | | 10/1986 | Amano | 380/23 |
| 4,633,297 | A | | 12/1986 | Skerlos et al. | |
| 4,670,857 | A | | 6/1987 | Rackman | 380/4 |
| 4,685,131 | A | | 8/1987 | Horne | 380/20 |
| 4,695,904 | A | | 9/1987 | Shinyagaito | 358/342 |
| 4,696,034 | A | | 9/1987 | Wiedemer | 380/16 |
| 4,718,107 | A | | 1/1988 | Hayes | 455/4 |
| 4,729,044 | A | | 3/1988 | Kiesel | 360/14.3 |
| 4,750,213 | A | | 6/1988 | Novak | 455/67 |
| 4,768,229 | A | | 8/1988 | Benjamin et al. | |
| 4,787,063 | A | | 11/1988 | Muguet | 364/900 |
| 4,814,883 | A | | 3/1989 | Perine | 358/181 |
| 4,837,623 | A | * | 6/1989 | Motoyama | 348/633 |
| 4,888,796 | A | | 12/1989 | Olivo, Jr. | 379/101 |
| 4,896,354 | A | | 1/1990 | Inagaki et al. | |
| 4,939,596 | A | | 7/1990 | Takayama | 360/27 |

* cited by examiner

# EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.



AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims **3**, **6**, **7**, **16**, **19** and **20** is confirmed.

Claims **1–2**, **4–5**, **8–15**, **17**, **18** and **21–26** are cancelled.

* * * * *

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

**CV09- 5095 PSG (RZx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL

Name & Address:
Gregor A. Hensrude, Esq.
Klinedinst PC
777 S. Figueroa St., 47th Floor
Los Angeles, California 90017
213-607-2115/FAX 213-607-2116

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Guardian Media Technologies, LTD<br>PLAINTIFF(S)<br>v. | CASE NUMBER<br>CV09-05095 PSG (RZx) |
| Echostar Corporation; Echostar Technologies, L.L.C.; Dish Network Corporation; Dish Network, LLC and Dish DBS Corporation<br>DEFENDANT(S). | **SUMMONS** |

TO: DEFENDANT(S): Echostar Corporation; Echostar Technologies, L.L.C.; Dish Network Corporation; Dish Network, LLC and Dish DBS Corporation

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Edward E. Casto, Jr., whose address is 5601 Bridge Street, Suite 300; Fort Worth, Texas 76112. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUL 14 2009

By: ____________________
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

COPY

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Guardian Media Technologies, Ltd.

**DEFENDANTS**
Echostar Corporation; Echostar Technologies, L.L.C.; Dish Network Corporation; Dish Network, LLC and Dish DBS Corporation

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Gregor A. Hensrude, Esq; Klinedinst PC
777 S. Figueroa St., 47th Floor
Los Angeles, CA 90017; 213-607-2115

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $** According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☑ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV09-05095

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): cv08-08439R (Coby); cv09-02733R (Apex) (cases being refiled individually, case numbers not yet assigned)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☑ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Colorado |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All, including Los Angeles County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 7/14/2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |